Cohen, J.
The plaintiffs are the respective owners of three parcels of registered land located at 3, 7, and 11 Davis Lane, a private way in the town of Harwich (town). These parcels extend in a more or less southerly direction from Davis Lane to the shoreline of Nantucket Sound. Over time, the shoreline has changed, and the parcels have accreted[4] significant portions of formerly submerged land.
*535 On September 29, 2011, the parcel owners filed supplemental petitions in the Land Court, seeking to amend their certificates of title. Jan H. Kalicki and John Michael Hershey (interveners) moved to intervene as defendants, alleging that they had acquired prescriptive rights over the accreted land. Upon informal consolidation of the cases for decision on the plaintiffs’ motions for summary judgment, the motion judge rejected the objections of the interveners and granted summary judgment to the plaintiffs.
The question for the judge was whether the accreted beachfront took on the status of registered land as it formed, or whether registered status could be obtained only through court proceedings to amend the certificates of title. The judge ruled that the accreted beachfront automatically became registered and, therefore, was protected from the interveners’ claims that they have a prescriptive easement to use the beach area on the plaintiffs’ land. Applying well-established standards of review,[5] we affirm.
Background. The material facts are not in dispute. The land comprising the plaintiffs’ parcels was registered in the 1920s and 1930s.[6] Under the terms of each certificate of title, ‘“[a]ll of said boundaries, except the water lines, are determined by the Court to be located as shown on” the associated Land Court plan. Each of the registration plans shows and identifies the southern boundary of the subject parcel as ‘“Nantucket Sound.”
In the decades following the registration proceedings, the size of the parcels grew substantially as a result of accretion. For example, a 2011 plan shows that since 1943, the waterfront boundaries of the two easternmost parcels had extended seaward some 347 to 358 feet. The interveners took the position that the accretion resulted, at least in part, from the erection of a jetty by the town; however, as the judge noted in his decision, this claim was never litigated. Regardless, the judge ruled (and it is not disputed) *536 that even if the jetty contributed to the accretion, a littoral owner ordinarily will still acquire ownership of accreted land that is created with human intervention so long as it was not caused by the owner himself or herself. See Lorusso v. Acapesket Improvement Assn., 408 Mass. 772, 780 (1990).[7]
The plaintiffs appended to their supplemental petitions proposed plans depicting extended sidelines through the accreted land, as well as the approximate mean high and low water marks at the parcels’ boundaries with Nantucket Sound. According to representations made in the plaintiffs’ brief and at oral argument before this court, their purpose in filing the supplemental petitions was to establish the parcels’ extended sidelines and thereby resolve any questions between abutting landowners as to their respective ownership rights in the accreted land. See Lorusso v. Acapesket Improvement Assn., supra at 780-781. Whatever their objectives, however, we draw no inference from the fact that the plaintiffs initiated proceedings to amend their certificates of title.
A court-appointed title examiner filed a report on March 23, 2012, and citations issued. The Commonwealth and the town both filed objections, but they later resolved their concerns and withdrew the objections.[8] Meanwhile, local residents, including Kalicki and Hershey, were permitted to intervene as defendants[9] and filed their own objections.
The interveners did not dispute that the plaintiffs own the accreted, previously submerged land by operation of law. See note *537 7, supra. Nonetheless, they claimed that they had acquired prescriptive easements to use the parcels’ beach area. The easternmost of the plaintiffs’ parcels, situated at 11 Davis Lane, abuts the town-owned Bank Street beach. Where Davis Lane is met from the north by a town way, Bay View Road, there is a town-owned path extending seaward along the edge of the town-owned beach adjacent to the 11 Davis Way parcel. The interveners alleged that for decades they and their predecessors had used the town-owned path to gain access to the plaintiffs’ parcels, and that they had engaged in continuous, open, and notorious adverse use of the parcels’ beach area. See Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 46 (2007).
Without conceding the facts underlying the interveners’ claims, the plaintiffs argued on summary judgment that the claims failed as matter of law, because — by statute — one cannot obtain prescriptive rights in registered land, see G. L. c. 185, § 53, and the accreted beachfront was protected by the existing registrations. The interveners countered that the previously submerged accreted land was not registered land when their prescriptive rights accrued, and could not become registered land until the parcels’ certificates of title were amended. The judge agreed with the plaintiffs, finding “that the accreted land automatically became a part of the registered land as it was formed,” and judgment entered for the plaintiffs.
Discussion. The specific issue presented — whether accretions to registered littoral land automatically acquire registered status at the time of their creation — has not been decided by the appellate courts. However, in 1989, a different judge of the Land Court (Fenton, J.) confronted the issue in Lorusso vs. Acapesket Improvement Assn., Inc., Land Court, No. 314-S (Mar. 24, 1989).[10] The motion judge in the present case relied largely on the rationale of the earlier Land Court judge, which can be summarized briefly as follows.
Littoral boundaries “frequently change, so that the actual boundaries will rarely correspond exactly with what is depicted on a registered owner’s certificate of title or land court plan.” Ibid. Thus, if accreted land is not deemed registered upon its *538 creation, owners of littoral property would need to “amend their [cjertificates of [tjitle on a regular basis to prevent any loss in their property rights due to adverse use by another. This would be inconsistent with one of the principal purposes of the registration system: ‘to make titles certain and indefeasible.’ ” I hid.. quoting from Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. 251, 260 (1961). Automatically endowing the accreted land with registered status also counterbalances the downside of owning registered littoral property, namely, that despite the protections afforded by registration, the landowner still bears the risk of losing all rights to any land that erodes away. See ibid.
We find this reasoning compelling, at least in the circumstances of the present case. Here, the interveners are not adjacent beachfront owners with their own rights in the accretions, and their claims relate only to the use of the expanded beach area at the shore of Nantucket Sound. As between adjacent beachfront owners, questions of ownership, not to mention registration, may need to be determined in court. As the Supreme Judicial Court explained, “[tjhe rule that the owner of littoral land gains ownership of accretions to his land is subject to, and modified by, the further rule that, when two or more littoral owners have rights to simultaneously formed accretions, the rights of the owners in the accretions are to be determined by the doctrine of equitable division.” Lorusso v. Acapesket Improvement Assn., Inc., 408 Mass. at 780-781. “[Tjhe object of apportioning simultaneous accretions among lots of littoral land is to give each owner the same proportion of the new waterfront that he would have had if the accretions had never occurred.” Id. at 781. Thus, depending upon the vagaries of the accretion, court proceedings to establish sideline boundaries and to amend the certificates of title may well be necessary and prudent.
Here, however, the waterfront boundary is the determinative factor, and it presents no uncertainty. No amendment to the prior registrations is necessary to establish definitively that the parcels remain bounded on the south by Nantucket Sound, as stated in the original certificates of title. In these circumstances, the plaintiffs, whom the interveners acknowledge to be the owners of the accreted land, should continue to derive the protection that the original registrations afforded them from claims of prescriptive rights in the beach.
Although the interveners emphasize that the amount of accretion is substantial, that fact is irrelevant. As the motion judge ex *539 plained, even though the plaintiffs could not have contemplated how much land would accrete to their property when they purchased or registered their parcels, the same can be said about any owner of littoral land. No such owner can predict whether or by how much their property will grow or recede, or how frequently or suddenly the shoreline will change one way or the other. What is relevant here is that the parcels have remained bounded by the sea, as stated in the original certificates of title.
This analysis does not conflate ownership and registration, as the dissent suggests, nor does it undermine the purposes of the registration system. It simply recognizes that there are sound reasons to extend the protections afforded by the registration system to accretions to registered land and thereby foreclose claims of prescriptive rights by individuals with no shared ownership interest in those accretions.
The interveners’ final point is that the importance of public rights militates against conferring registered status automatically upon accreted land. We see no reason why that should be the case. When land has accreted, the public retains its access and rights to the tidelands wherever they exist, and may fish, fowl, or navigate in those tidelands as established by the Colonial Ordinance of 1641-1647. See Pazolt v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 571 (1994). See also Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. at 261. In Michaelson, the Commonwealth had caused accretion to registered land by dredging and pumping sand from the floor of the harbor. Id. at 252 The court concluded that because the landowners did not cause the accretion, the law applicable to natural accretions should govern. Thus, the landowners had title to the newly created beach, and the public had no right to use it, except as to the portion between the high and low water mark, for the purposes of navigation, fishing, and fowling. Id. at 261. The result is the same here.
To the extent that the interveners suggest, by analogy to Arno v. Commonwealth, 457 Mass. 434 (2010), that the public may have additional rights in land that once was Commonwealth tidelands, they have no standing to raise the issue. See Attorney Gen. v. Williams, 174 Mass. 476, 483 (1899); Wellfleet v. Glaze, 403 Mass. 79, 88 (1988) (Wilkins, J., concurring). Notably, those charged with protecting public rights — the Commonwealth and the town — have resolved their concerns and withdrawn their objections, as discussed above. See note 8, supra.
Conclusion. The accreted beach area on the plaintiffs’ parcels is entitled to the protection afforded by registration and is not *540 subject to the prescriptive easement claims alleged by the inter-veners. Accordingly, the judgment of the Land Court is affirmed.

So ordered.

“Accretion” has been described as occurring “[w]hen the line between water and land bordering thereon is changed by the gradual deposit of alluvial soil *535 upon the margin of the water .” Allen v. Wood, 256 Mass. 343, 349 (1926) (quotation omitted).

“The allowance of a motion for summary judgment is reviewed de novo. The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” White v. Hartigan, 464 Mass. 400, 406 (2013) (citations and quotations omitted).

There were three initial registration proceedings, in 1923, 1933, and 1939. However, two of the parcels were merged and later subdivided along a different boundary. Thus, the original registration proceedings do not correspond exactly with the parcels in their' current configuration.

The general rule is that “[t]he line of ownership [of littoral property] follows the changing water line.” White v. Hartigan, 464 Mass. at 407, quoting from East Boston Co. v. Commonwealth, 203 Mass. 68, 75 (1909). However, there are two recognized exceptions. The owner may not be entitled to the accreted land if the owner caused the accumulations, see Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. 251, 254 (1961); and, if the accretions were created by the government as a necessary aid to navigation, they belong to the government. Lorusso v. Acapesket Improvement Assn., 408 Mass. at 780. Neither of these exceptions is applicable here.

The Commonwealth withdrew its objections after the execution of stipulations with each of the plaintiffs that any decree would reflect that the area between the mean high water mark and mean low water mark would be subject to the rights of the public. The town withdrew its objections after entering into a settlement agreement with the plaintiffs regarding, inter alia, the boundary between the easternmost of the subject parcels and a town-owned beach, the relocation of a town-owned path to the beach, and the installation of fencing and signs. The agreement also set out contingencies for easements that would be established if the town conservation commission failed to approve the settlement, or if its approval was overturned on appeal.

Kalicki intervened in all three cases; Hershey intervened in two.

When the case reached the Supreme Judicial Court, the only question presented was whether the defendant, whose property (a sand bar) had eroded away, was entitled to an equitable share of accretions to the plaintiffs beachfront property; the issue of automatic registration of accreted land was not appealed. See Lorusso v. Acapesket Improvement Assn., Inc., 408 Mass. at 773.